**GUZZARDO & ASSOCIATES LLC**
**JOSEPH P. GUZZARDO, ESQ**
**N.J. ID 045892004**

**GOLDBERG MILLER AND RUBIN PC**
**JEFFREY TENTHOFF**
**N.J. ID 18252011**

**121 S. Broad Street**
**Suite 1600**
**Philadelphia, PA 19107**
**Attorneys for Plaintiff**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| GARY EVANGELISTA | : | |
| | : | |
| And | : | |
| | : | |
| KABERIA FUSSELL | : | |
| | : | |
| | : | **Civil Action: 20-16824** |
| Plaintiff | : | |
| | : | |
| vs. | : | JURY TRIAL DEMANDED |
| | : | |
| THE HOUSING AUTHORITY OF | : | |
| THE CITY OF CAMDEN | : | |
| | : | |
| And | : | |
| | : | |
| VICTOR D. FIGUEROA | : | |
| | : | |
| And | : | |
| | : | |
| KATHERYN BLACKSHEAR | : | |
| | : | |
| And | : | |
| | : | |
| DEBBIE PERSON-POLK | : | |
| | : | **CIVIL ACTION COMPLAINT** |
| Defendants | : | |

## SECOND AMENDED COMPLAINT

### I.  INTRODUCTION

1.      This action for declaratory, injunctive and other appropriate relief is brought by Plaintiff

Gary Evangelista ("Plaintiff", "Plaintiff Evangelista" or "Evangelista") to redress the

intentional violations by Defendants and others of the rights secured to her by the laws of

the United States of America and the State of New Jersey.

### II.  JURISDICTION

2.      Jurisdiction is conferred upon this court by the First and Fourteenth Amendments of the

Constitution of the United States and 42 U.S.C. § 1983 which provide original jurisdiction

for Plaintiff's claims

3.      Jurisdiction over the state law claims is based on the principles of supplemental

jurisdiction, as codified at 28 U.S.C. § 1367.

4.      The amount in controversy exceeds one hundred fifty thousand dollars ($150,000).

### III.  VENUE

5.      All actions complained of herein have taken place within the jurisdiction of the United

States District Court for the District of New Jersey and involve Defendants who reside

within the jurisdictional limits.  Venue is accordingly invoked pursuant to the dictates of

28 U.S.C. § 1391(b) and (c).

### III.  PARTIES

6.      Plaintiff, Gary Evangelista, is an adult individual who resides at 43 Spring Hill Drive,

Laurel Springs, N.J. 08021.  At all times material, Plaintiff has been an employee of, and

Director of Security/Risk Management (third party insurance claims) for the Housing

Authority of the City of Camden.

7.      Plaintiff, Kaberia Fussell, is an adult individual who resides at 3 Josie Lane, Atco, N.J., 08044.  At all times material, Ms. Fussell was an employee of the Housing Authority of the City of Camden where she worked as a Housing Specialist and served as her Union's Shop Steward.

8.      Defendant Housing Authority of City of Camden (HACC) is an incorporated municipal entity located in Camden County, NJ, with municipal offices located at 2021 Watson Street, 2nd Floor, Camden, New Jersey 08105.

9.      At all times material, Defendant, Victor Figueroa, has served as the Executive Director of the HACC.

10.     As Executive Director, Figueroa was responsible for the entire administration of the HACC at all times material,[1] and was a policymaker, capable of creating and implementing written and unwritten policies, customs, and practices of the HACC. Plaintiff brings the instant civil action against Figueroa in both his individual capacity.

11.     At all times material, Defendant Katheryn Blackshear, served as Deputy Executive Director of HACC.  Plaintiff brings the instant civil action against Blackshear in both her individual capacity.

12.     At all times material, Defendant Debbie Person-Polk, served as the Chairwoman of the HACC Board of Commissioners. As Chairwoman, Polk was responsible for implementing and approving policy.  Plaintiff brings the instant civil action against Person-Polk in both her individual capacity.

---

[1] In practice, Defendant Blackshear exerted similar if not greater control over HACC.

## IV.  FACTS

13.  Plaintiff incorporates the above paragraphs by reference.

### A.  Plaintiff, Evangelista

14.  Prior to joining HACC, Plaintiff was a Camden City Police Officer twenty-seven years, where he served with distinction and retired with the rank of sergeant.

15.  Plaintiff retired from the police force and began his career with HACC in 2000 as a security supervisor.  In this role, Plaintiff was responsible for supervising the security guards who monitored HACC housing units.  Plaintiff's job duties were not set forth in writing.

16.  HACC recognized Plaintiff's exceptional work and promoted him to Director of Security around the year 2006.  Plaintiff's duties were expanded to include security guard scheduling, payroll and hiring/firing of security personnel.  Plaintiff's job duties were not set forth in writing.

17.  Finally, in or around the year 2013, Plaintiff was again promoted, and his duties expanded to include insurance claim management for issues such as slip and fall accidents and property damage claims.

18.  From 2000 through November 18, 2018, Plaintiff's employment record was nearly exemplary except for a single reprimand for a minor infraction on or about July 13, 2007, for an alleged misuse of a company computer.

### B.  Plaintiff, Fussell

19.  Ms. Fussell began her employment with HACC in 2010 as a housing specialist. Plaintiff's duties did not include receiving complaints from tenants.

20.     Plaintiff, Fussell, also served as the Chief Union Shop Steward for the American Federation of State Municipal Employees, Local 3441.

21.     As her union's Chief Union Shop Steward, Plaintiff, Fussell, was the union representative responsible for communicating with and organizing her union members.

22.     As her union's Chief Union Show Steward, Plaintiff, Fussell, was responsible for representing union members and investigating grievances on behalf of her union members; both functions necessitated communicating with fellow employees, both within and without the Union.

23.     As a member of her union, Plaintiff, Fussell's right to communicate and associate with her union members, union representatives and other co-workers is constitutionally protected First Amendment speech.

24.     As the sole Union Shop Steward, Plaintiff, Fussell had the right to investigate the allegations against herself as a member of the Union.

25.     Plaintiff had no disciplinary history through the date of her suspension and termination which forms the basis of the instant civil action.

   **C.     HACC Employees Begin To Report Their Co-Worker, Malcolm Isler's, Illegal Activity To Plaintiffs and Plaintiffs In Turn Report This Information To Defendant, Figueroa, and others, And are Retaliated Against.**

26.     At all times material, HACC owned and/or maintained nine housing sites, two of which are relevant to the instant civil action:  Ablett Village and Branch Village.

27.     HACC employee and Director of Asset Management, Malcolm Isler, oversaw and controlled the various assets associated with Ablett Village and Branch Village.

28.     Malcolm Isler is close personal friends with Defendants, Deborah Polk and Katherine Blackshear.

29.    According to Defendant Figueroa's sworn testimony, Polk and Blackshear "protected" Isler from discipline.

30.    Plaintiff, Evangelista's law enforcement history was well known among his HACC co-workers and, as a result, HACC employees felt comfortable reporting criminal activity to Plaintiff, although it was not Evangelista's job to investigate or "solve" crimes, especially those perpetrated by HACC employees.  Rather, that duty fell to Executive Director, Figueroa, the Camden Police and HACC Human Resources.

### 1.    The Carol Broomell Incident

31.    In November or December of 2017, an unknown individual slid a resident payment sheet under Plaintiff, Evangelista's, office door indicating that a HACC resident, Carol Broomell, owed HACC $10,000 in unpaid rent, which should have resulted in her eviction.

32.    Instead, Malcolm Isler moved Broomell to another HACC apartment instead of evicting Broomell and making the space available to another person in need.  This is a violation of law.

33.    Malcolm Isler did not evict Broomell because Defendant, Blackshear, was friends with Broomall and directed Isler not to take any action.

34.    Plaintiff verbally reported the Broomell incident to Defendant, Figueroa, although it was not Plaintiff's job to do so.  Figueroa took no action.

### 2.    The First Cash for Scrap Metal Scheme

35.    In or around April of 2018, HACC employees working at Ablett Village were gathering scrap metal from Branch and Ablett Village in order to exchange the scrap for money at local scrap yards.

36.   The scrap metal was HACC property/assets and, as such, any money derived from same should have been reported to the HACC finance department.  Instead, HACC employees, with Isler's knowledge and consent, kept the money for themselves.  This was a crime.

37.   HACC employees confided in Plaintiff, Evangelista, that fellow HACC employee, Malcolm Isler, was aware of, and permitted HACC employees to keep the scrap money for themselves.  Thereafter, Plaintiff acquired receipts from HACC employees demonstrating the financial return from scrap metal.

38.   Evangelista thereafter verbally reported this criminal activity, and turned over the receipts, to Defendant, Figueroa.   It was not Plaintiff's job to report this information, but rather the ethically correct thing to do.

### 3.   The Brian Coleman Incident

39.   In or around May of 2018, former Camden City Council member, Brian Coleman's relative, Angela Coleman, violated the "One Strike" program [2] and should have been evicted from her apartment in Ablett Village.

40.   Pursuant the One Strike program, Angela Coleman was no longer eligible for any HACC/HUD public housing going forward.

41.   However, in contravention of law, Malcolm Isler placed Coleman in another HACC apartment located in the Chelton Terrace site.  This was done because of the relationship between Brian Coleman, Blackshear and Polk.

42.   Plaintiff, Evangelista, reported this information to Defendant, Figueroa.  No action was taken.

---

[2] One Strike is a strict, straightforward policy that ensures that public housing residents who engage in illegal drug use or other criminal activities on or off public housing property face swift and certain eviction. One Strike is the toughest admission and eviction policy that HUD has implemented.

### 4.   The Second Cash for Scrap Metal Scheme

43.   In June of 2018, HACC employees Normal Lee and Plaintiff, Kaberia Fussell, confided in Plaintiff that HACC employees under Isler's control were taking HACC assets from the Branch Village site, including cooper and aluminum pipes, radiators and old refrigerators, and again exchanging these assets for money at local scrap metal recycling company, EMR Scrap Metal.

44.   This "scrap for cash" scheme was on an even larger scale than before.

45.   Again, although it was not his job to do so, Evangelista, thought it was his ethical duty to investigate and report this criminal activity to Defendant, Figueroa.

46.   Plaintiff thereafter contacted EMR Metal Recycling located at 1500 S 6th St, Camden, NJ 08104 in an effort to confirm the aforementioned illegal activity, which resulted in Plaintiff learning that HACC trucks were spotted at the facility.

47.   In an effort to avoid spreading an unsubstantiated rumor, Plaintiff, Evangelista, obtained photographs of HACC trucks at EMR and provided them to Defendant, Figueroa, along with the information passed to him from Norman Lee and Plaintiff, Fussell, regarding Malcolm Isler's role in the scheme.

### 5.   The Aaron Yelverton Incidents--Fussell and Evangelista speak out against unlawful sexual harassment

48.   Finally, in October of 2018, Kaberia Fussell speaks out and provides information, along with co-worker, Norman Lee, that the maintenance supervisor, Aaron Yelverton, was asking for sex in exchange for fixing women's units in Ablett Village.

49.   Fussell and Lee report this information to Plaintiff, Evangelista, believing that Evangelista would then report the matter to Defendant, Figueroa.

50.   Mr. Yelverton had close personal ties to Malcolm Isler.

51.   In response, Plaintiff, Evangelista, once again reported this information to Figueroa, because Evangelista thought it was his moral and/or ethical responsibility to do so.

52.   Approximately two weeks later, in November, Kaberia Fussell escorted a female HACC resident ("The Resident") to Evangelista's office and stated to Evangelista that The Resident needed help to address Yelverton's sexual advances.  The Resident proceeded to complain about the aforementioned maintenance worker, Yelverton, and his penchant for sexual coercion.

53.   Plaintiff, Evangelista, thereafter, suggested that The Resident to contact Malcolm Isler with her concerns; however, The Resident resisted, explaining that Isler "was in on it" and that he would do nothing.

54.   Evangelista then suggested that The Resident take her complaint to Defendant, Figueroa. Not wanting to let the matter go unreported, Evangelista spoke out once again and told Figueroa what he had learned.

55.   Shortly after Plaintiff's exchange with The Resident, Isler aggressively confronted Defendant Figueroa about Plaintiff's reporting of Isler's criminal conduct, and began screaming at Figueroa, saying "who does he [Evangelista] think he is," for reporting The Resident's complaints to Defendants.

**D.   Defendants Retaliate Against Plaintiffs and Norman Lee Under The False Pretext That They Failed to Reveal All Allegations and Rumors, And Communicated With Other HACC Employees**

56.   On or about November 21, 2020, Defendants, Blackshear and Polk, directed Defendant, Figueroa, to place Plaintiffs, Kaberia Fussell and Gary Evangelista (and Norman Lee) on administrative leave/suspension because they "became aware that Evangelista [and Lee and Fussell] have been involved "in an alleged resident matter that may constitute severe

violations of the Housing Authority's Human Resource Policy." This was in retaliation for Plaintiffs' protected speech regarding Malcolm Isler's criminal conduct.

57.  After being placed on administrative leave/suspension, Defendants demanded that Plaintiff, Evangelista, disclose the HACC employees who repeatedly provided information to him regarding Isler's criminal conduct.[3]

58.  HACC further notified Plaintiff, Lee and Fussell that they were "not authorized to communicate with any other HACC employees."

59.  This was pursuant to a specific written and/or informal policy created and enforced by Defendants against Plaintiffs.

60.  This policy prohibited all speech and association with HACC employees and therefore was clearly overbroad and infringed upon Plaintiffs' protected First Amendment right to free speech and association.

61.  Defendant, HACC's policy regarding investigating resident complaints also permitted Defendants to manufacture a pretext for dismissing Plaintiffs.

62.  Defendant, HACC's policy regarding investigating resident complaints allowed Defendants to prohibit Plaintiffs from "communicat[ing] with any other HACC employees" thereby violating Plaintiffs' First Amendment rights.

63.  Defendants' policy prohibiting their ability to communicate with other HACC employees was in retaliation of Plaintiffs' First Amendment protected speech.

64.  Defendants' policy prohibiting Plaintiff, Fussell's ability to communicate with other HACC employees violated Plaintiffs' First Amendment protected union speech, in that Plaintiff, Fussell was not permitted to communicate with her union representatives and/or

---

[3] HACC obviously knew the identity of Plaintiff's informants as evidenced by Defendant's contemporaneous retaliation against Normal Lee and Kaberia Fussell, both of whom were also suspended/terminated.

other HACC employees to investigate the allegations against her in order to defend her administrative leave.

65.    Defendants' policy prohibiting Plaintiff, Fussell's ability to communicate with other HACC employees violated Plaintiffs' First Amendment protected union speech, in that Plaintiff, Fussell was denied her ability to engage in her union shop steward duties of communicating with union members and representatives and investigating grievances.

66.    Thereafter, in early December 2018, Defendant Figueroa initiated an investigation into The Resident's Complaints and HACC's concerns and held a series of meetings regarding Evangelista, Fussell and Lee as well as Fussell and Lee's direct superior, Malcolm Isler.

67.    By letter dated December 19, 2018, at Defendants Blackshear and Polk's directive, Defendant Figueroa terminated Evangelista, Lee and Fussell.

68.    This was done in retaliation for their reporting of Isler's criminal conduct.

69.    Defendants were able to do this by virtue of Defendant, HACC's policies/procedures regarding investigating resident complaints.

70.    In order to facilitate their termination, Defendants created the false pretext that all three individuals were fired because they "communicated with other HACC employees" and, in Evangelista's case, because he failed to disclose the HACC employees who confided in him regarding Isler's conduct.

71.    Defendant, HACC's policies/procedures regarding investigating resident complaints permitted the remaining Defendants to retaliate against Plaintiffs for their First Amendment protected speech.

72.     Defendant, HACC's policies/procedures regarding investigating resident complaints permitted the remaining Defendants to violate Plaintiff, Fussell's First Amendment protected union speech by precluding her form communicating with any HACC employee, including any of her union representatives and/or members.

73.   There exists abundant evidence of Defendants' pretextual reasons for terminating Plaintiffs.

74.   By way of example, Defendant, Figueroa, was concerned that Defendants Polk and Blackshear would also retaliate against him for his role investigating Malcolm Isler.  As a result, on January 10, 2019, Figueroa met with former councilman Ali Sloan-El and stated that neither should have been fired, but that Defendant Katherine Blackshear demanded they be terminated because Plaintiffs were lying to hurt Malcolm Isler.

75.   By way of further example, a November 30, 2018, letter from HACC Human Resources indicates that Plaintiffs should be terminated for "failing to reveal all allegations and rumors" to the executive office but makes no mention of "communication with other HACC employees."

76.   Following Evangelista's termination, Plaintiff, Evangelista, appealed his disqualification from unemployment benefits to the New Jersey Department of Labor Appeal Tribunal on the ground that he was discharged for misconduct.

77.   The appeal tribunal issued a decision on February 19, 2019, finding no evidence that Plaintiff intentionally or deliberately violated the employer's policy.

78.   Defendants then appealed to the New Jersey Department of Labor Board of Review after which the matter was remanded and the Appeal Tribunal again determined, on May 3,

2019, that Plaintiff committed no misconduct in failing to disclose the names of his coworkers who confided in him.

79. The Defendants once again appealed the Appeal Tribunal's decisions after which the Board of Review agreed that Plaintiff's refusal to disclose the names of his coworkers was not misconduct, but that Plaintiff's communication with his coworkers while on suspension was misconduct.

80. Importantly, The New Jersey Department of Labor never took up the issue of whether Plaintiff's comments (reporting Malcolm Isler's criminal activity) are protected by the First Amendment and whether they were the *true reason* of his discharge.

81. Plaintiff, Fussell, also disputed her termination.

82. Since Ms. Fussell was a union member, her appeal proceeded through the Public Employment Relations Commission, where it was determined that Ms. Fussell "was not guilty of any of HACC's specific charges."

83. As the Commission correctly noted, the only arguably viable charge—communicating with other HACC employees while on suspension—cannot support terminating Fussell because Defendants do not have the power to restrict communication between employees concerning disciplinary matters---Simply put, Defendants cannot deny Plaintiffs their contractual and statutory right to defend themselves.

84. Nor can Defendants frustrate or deny Plaintiff, Fussell her ability to engage in union activities and/or communicate with union members either as a Shop Steward or in an effort to investigate resident complaints and/or grievances and defend herself against them.

85. This is especially true as Plaintiff, Fussell was her Union's sole Shop Steward at the time.

86.     As the Commission notes, Defendant, HACC's policies permitted an overly broad
        prohibition on Plaintiff's speech and union activities.

87.     The above-named Defendants terminated a fourth HACC employee, Traci Willis,
        because of her involvement with the investigation and reprimand involvement of
        Malcolm Isler; the fact that the Defendants took the same action four separate times
        against four separate HACC employees evidences a clear retaliatory custom and/or policy
        with respect to whistleblowing activity against employees that Defendants deem
        "protected."[4]

88.     As a direct and proximate result of the actions of Defendants, Plaintiffs have suffered and
        will in the future suffer pain, emotional distress, physical manifestation of emotional
        distress, mental anguish, humiliation, embarrassment, inconvenience, loss of pleasure and
        enjoyment of life, loss of reputation, lost wages, lost wage-earning capacity, loss of
        benefits, loss of pension monies, and past and future expenses.

**COUNT I**
**PLAINITFFS V. ALL DEFENDANTS**
**42 U.S.C. § 1983**
**FIRST AMENDMENT VIOLATIONS**

89.     Plaintiffs adopt and incorporate the allegations in the above paragraphs as though each
        were individually stated herein at length.

90.     Defendants violated the provisions of 42 U.S.C. § 1983, in that Defendants, acting under
        color of State law, deprived Plaintiffs of the privileges and immunities secured to them
        by the First and Fourteenth Amendments of the United States Constitution and, in
        particular, the right to hold employment without infringement of their First Amendment
        right to freedom of speech and association.

---

[4] Willis filed a separate civil action against Defendants which remains pending.

91.    Plaintiffs engaged in protected activity by speaking out as citizens regarding matters of public concern.

92.    Plaintiffs speaking out was not done in the ordinary course of their duties for the Housing Authority of the City of Camden.

93.    In order to retaliate against Plaintiffs for engaging in protected activities, Defendants intentionally took adverse action against Plaintiffs by wrongfully and improperly suspending and then terminating them.

94.    Defendants' actions aforesaid were intentional, willful, and reckless and were to penalize and retaliate against Plaintiff for his exercise of fundamental First Amendment rights.

95.    As a direct and proximate result of the actions of Defendants, Plaintiffs have suffered and will in the future suffer pain, emotional distress, physical manifestation of emotional distress, mental anguish, humiliation, embarrassment, inconvenience, loss of pleasure and enjoyment of life, loss of reputation, lost wages, lost earning capacity, loss of benefits, loss of pension monies, and past and future expenses.

WHEREFORE, Plaintiffs respectfully requests this Honorable Court:

a.    Enter a declaratory judgment that Plaintiff, Evangelista, is to be returned to his position with the City of Camden Housing Authority, with all benefits, seniority, and salary reinstated, retroactive to the time of his suspension without pay.

b.    Enter a declaratory judgment that Defendants' acts complained of herein have violated and continue to violate the rights of Plaintiffs as secured by the United States Constitution;

c.    Enter a declaratory judgment that the disciplinary action taken against Plaintiffs, including termination, shall be null and void.

d.  Award Plaintiffs compensatory damages including but not limited to pain,

suffering, past economic loss, future economic loss, back pay, front pay, wage

increases, benefits, lost pension monies, loss of life's pleasures, loss of reputation,

benefits, emotional distress and other damages.

e.  Award reasonable costs and attorney's fees.

f.  Award punitive damages; and

g.  Grant any other relief this Court deems just and proper under the circumstances.

### COUNT II: PLAINTIFFS v. DEFENDANT, HACC
### 42 U.S.C. § 1983
### FIRST AMENDMENT VIOLATIONS *(Monell Claim)*

96.  Defendant City of Camden Housing Authority is liable for the policies, customs, and

practices promulgated, developed and/or maintained by Defendants, Polk, Blackshear and

Figueroa, as Chairwoman of the Board of Commissioners, Deputy Executive Director

and Executive Director, respectively.

97.  Defendant City of Camden Housing Authority developed and maintained a number of

deficient policies and/or customs which caused the deprivation of Plaintiffs'

constitutional rights.

98.  In particular, Defendant HACC maintained a policy regarding investigations into resident

complaints that permitted Defendants, Polk, Blackshear, and Figueroa the authority to

retaliate against Plaintiffs for their protected First Amendment Speech.

99.  Similarly, Defendant HACC's policy regarding investigations into resident complaints

permits Defendants, Polk, Blackshear, and Figueroa to violate Plaintiff, Fussell's First

Amendment union speech rights by granting Defendants the authority to restrict

Plaintiff's interactions with union representatives and members during an investigation

into resident complaints.

100. By giving Defendants, Polk, Blackshear, and Figueroa the authority to engage in sham investigations and prohibit contact and association with union representatives and union members without providing the necessary oversight to ensure that these policies are not abused, HACC has condoned Defendants' actions and is complicit with them.

101. Defendant HACC's policies and customs encouraged Defendants, and others, to believe that they could violate the constitutional rights of Plaintiffs with impunity and with the explicit or tacit approval of Defendant City of Camden.

102. As a direct and proximate result of the actions of Defendants, Plaintiffs have suffered and will in the future suffer pain, emotional distress, physical manifestation of emotional distress, mental anguish, humiliation, embarrassment, inconvenience, loss of pleasure and enjoyment of life, loss of reputation, lost wages, lost earning capacity, loss of benefits, loss of pension monies, and past and future expenses.

WHEREFORE, Plaintiffs respectfully requests this Honorable Court:

    **h.** Enter a declaratory judgment that Plaintiff, Evangelista, is to be returned to his position with the City of Camden Housing Authority, with all benefits, seniority, and salary reinstated, retroactive to the time of his suspension without pay.

    **i.** Enter a declaratory judgment that Defendants' acts complained of herein have violated and continue to violate the rights of Plaintiffs as secured by the United States Constitution.

    **j.** Enter a declaratory judgment that the disciplinary action taken against Plaintiffs, including termination, shall be null and void.

k.   Award Plaintiffs compensatory damages including but not limited to pain, suffering, past economic loss, future economic loss, back pay, front pay, wage increases, benefits, lost pension monies, loss of life's pleasures, loss of reputation, benefits, emotional distress and other damages.

l.   Award reasonable costs and attorney's fees.

m.   Award punitive damages; and

n.   Grant any other relief this Court deems just and proper under the circumstances.

**COUNT III**
**PLAINITFF, KABERIA FUSSELL V. ALL DEFENDANTS**
**42 U.S.C. § 1983**
**FIRST AMENDMENT VIOLATIONS—UNION ACTIVITY**

103.   Plaintiff adopts and incorporates the allegations in the above paragraphs as though each were individually state herein at length.

104.   The aforementioned adverse actions and conduct by defendants were undertaken to retaliate against Plaintiff for her protected union speech and association.

105.   In addition, Defendants violated Plaintiff, Kaberia Fussell's First Amendment Rights regarding union speech when they placed her on administrative leave pending their investigation, which as previously pled was a fabricated pretext for retaliating against Plaintiffs, and at the same time prohibited her from communicating with her any HACC employees during said investigation.

106.   Preventing Plaintiff from communicating with any HACC employees violated her First Amended Union Speech by preventing her from communicating with her union representatives and/or other HACC employees for Ms. Fussell to help investigate the claims against her, and aid and prepare for her defense of the investigation into a resident complaint that was the pretext for the administrative leave.

107.  As union shop steward, Ms. Fussell would typically be the union representative to investigate grievances and resident complaints leading to HACC investigations and/or administrative leave.

108.  In fact, Defendants terminated Plaintiff, Fussell upon learning that she had communicated with a HACC employee presumably to investigate the complaint against her.

109.  Defendants' policy and prohibition of communicating with HACC employees for any reason whatsoever is so over broad and unrestricted that it clearly infringes upon First Amended protected speech and right to association; tellingly, Defendants admittedly did not know the substance of any of the alleged communications that led to Plaintiff being terminated, it was simply enough that there was evidence that she had some communication with another HACC employee while on leave.

110.  Defendants' prohibition of communicating with HACC employees also denied Plaintiff, Fussell the right to engage and/or conduct her union activities as a Union Shop Steward.

111.  Plaintiff's participation in her union, including her being the union's shop steward and the activities associated therewith, is protected First Amendment speech.

112.  Defendants, by prohibiting Plaintiff to speak with HACC employees during the pretextual investigation prevented Plaintiff from engaging in her union thereby violating Plaintiff's First Amendment union speech rights.

113.  Defendants' prohibition of Plaintiff's ability to communicate with employees directly conflicts with her responsibilities as a Shop Steward and served to impose a chilling effect on the Union's, and Plaintiff's, ability to obtain information in support of a union member's defense.

114.   Defendants willfully and recklessly took adverse employment action against Plaintiff in order to deny Plaintiff her First Amendment right to free speech and association.

115.   Defendants' actions were to penalize and retaliate against Plaintiff for her exercise of fundamental First Amendment protected activity.

116.   Thus, Defendants violated the provisions of 42 U.S.C. § 1983 in that Defendants, acting under color of state law, deprived plaintiff of her privilege and immunities secured to her by the First and Fourteenth amendment of the United States Constitution and, in particular, her right to hold employment without infringement of her First Amendment right to freedom of speech and association.

WHEREFORE, Plaintiffs respectfully requests this Honorable Court:

a.   Enter a declaratory judgment that Defendants' acts complained of herein have violated and continue to violate the rights of Plaintiff as secured by the United States Constitution.

b.   Enter a declaratory judgment that the disciplinary action taken against Plaintiff, including termination, shall be null and void.

c.   Award Plaintiff compensatory damages including but not limited to pain, suffering, past economic loss, future economic loss, back pay, front pay, wage increases, benefits, lost pension monies, loss of life's pleasures, loss of reputation, benefits, emotional distress and other damages.

d.   Award reasonable costs and attorney's fees.

e.   Award punitive damages; and

f.   Grant any other relief this Court deems just and proper under the circumstances.

Respectfully submitted,

**GUZZARDO & ASSOCIATES LLC**

BY:     /s/Joseph P. Guzzardo, Esq.
         Joseph P. Guzzardo, Esquire
         Attorney for Plaintiffs

**GOLDBERG MILLER AND RUBIN PC**

BY:     /S/ Jeffrey Tenthoff, Esq.
         Jeffrey Tenthoff, Esq.
         Attorney for Plaintiffs

**Dated and electronically filed:  6/9/2022**